Good morning, Your Honors. May it please the Court, I'm Robert Powell. I'm here on behalf of the plaintiffs, Lauren Taylor and her minor children. Stephen King is also here on behalf of Mr. Lewis's request for admissions, although I will be handling the entirety of the oral argument. There are, of course, many, many issues. So I'm going to try to get out a couple here quick before some questions come. First, I want to point out this little tidbit, which I found a bit infuriating. In the defendant's brief, they described the removal of these children as a temporary removal. These children were separated from their parents for a period of time, five days less than one year. Does it matter for purposes of this appeal? No, but you probably shouldn't be. No, not for the purposes of what I'm kind of finding the violation. For the purposes of the issues in front of us, it doesn't matter whether they were kept apart for five days or one day, right? Yeah, or a New York minute. OK, so? So I want to turn to the MSA issue, because they cite the argument that there's no, because it went to trial, that the MSA can't be ruled upon. But in our brief, one of the many problems that we have with how this trial progressed is the fact that the court would not allow us to have an instruction on the procedural due process. And with that, I still don't understand how that makes your motion for summary judgment argument reviewable on appeal. We've said any number of times that if a judge denies a motion for summary judgment, we review the final judgment at trial. If there wasn't sufficient evidence to go to the jury, then you should win under Rule 50. But we never review denials of motion for summary judgment. Is there any case in which we've ever done it? This could be your first, because. It could. It could be the first one in the entire country for any court. But there's a reason why we don't do it. We now just have the summary judgment record. We have the complete record at trial. Understood. But unfortunately, that's one of the biggest issues in this case is what happened in this trial. So if I may. But I think that's what you ought to be talking about. Because it seems to me that even if the judge should have granted summary judgment on the record as it stood at the time, if the trial record compels a different result, then we ought to look at the trial record. And if the trial record is consistent with your summary judgment motion, tell us why you should win as a matter of law. I'm telling you why there's apples and oranges. I'm telling you why MSA, let's call that an apple, and let's call what happened at trial an orange. The procedural due process claim was denied at trial. Therefore, the jury did not hear it. So you cannot say that on that trial record, where they did not ever hear it, that that somehow prohibits having this court review that MSA. Now, let me just make it clear. We're not reviewing the MSA, motion for summary judgment. What we are reviewing is whether or not the trial judge erred in not submitting a separate due process claim to the jury, if that's your claim. But that's because that's what occurred at trial, not what occurred at the time of the motion for summary judgment. However, I submit to you, Your Honor, if you agree that the court should have done the pre, should have allowed us to have had our procedural due process claim, that goes to the very heart of the MSA, which, as you know, I cannot. If you want to tie it to the MSA, that's fine. We don't review denials of motion for summary judgment. You preserve the argument by raising it in your motion for summary judgment. But what we're reviewing is the trial judge's decision not to submit a procedural due process claim to the jury. And I understand this is normally a one-way street, but I need to ask the court, if I may, choose not to answer that. If, in fact, I prevail on the court that we should have had a procedural due process claim, which, by the way, the model jury instructions were recently amended. And now they have a very clear distinction about this substantive due process and this procedural due process claim. I mean, just recently. It was a bit of a shock to find it in there. So these are two distinct claims. So would the court agree? Is there enough evidence in the record at the trial to substantiate a procedural due process instruction? Absolutely. OK. So I'm having a hard time. Tell us why, and if you're right, then you'll prevail. But it won't be because you lost your motion for summary judgment. It will be because the judge didn't give the instruction. Right. So tell us. Listen to the two judges on my right and left. Just argue the argument on the merits. I'm sorry, I didn't hear you there. I said, they're right. Argue the argument on the merits. She should have given the procedural due process instruction because? Because we had a procedural due process claim. What the heck? That's the beginning of this case. And that's why. Tell us the facts that support your procedural due process claim. The children were taken in an absence of an imminent risk of serious bodily injury when there was sufficient time to get a warrant. And most importantly, in this case, there was obvious less intrusive means. All of the alleged danger. So what do we do with the jury's factual finding with respect to the two officers on the scene? Instructed about what exigent circumstances were that they did not act unreasonably. The jury was told, you should find that they were seized unreasonably unless you find there were exigent circumstances known to the officers. And then a whole series of definitions. I'm not going to reread it. And the jury finds, as a matter of fact, that there were exigent circumstances known to the officers, which led them to reasonably believe the children were in danger of imminent harm. So if we credit that jury finding, doesn't that mean your procedural due process claim goes away? There is no jury finding in the way that the court just mentioned it. That does not exist in this record. It does not. They were not given a jury instruction for procedural due process. That's not what I'm asking. So let's see if we can try to just do that. But we can look at the special verdict for us. Yeah. Correct, which doesn't say it. Right, but there was an instruction to the jury that said, you should find that the children were taken unreasonably, without a warrant, unless you find that the defendants, the two people on the scene, put aside Ms. Jameson for a second, had knowledge of exigent circumstances and identified exigent circumstances in a certain way. And the jury then finds that these two people did not violate the Fourth Amendment by acting unreasonably. Your procedural due process argument is that they should have gone and gotten a warrant first. And the jury found that they didn't need to because of exigent circumstances. So even though the jury wasn't instructed on procedural due process, doesn't that finding on your Fourth Amendment claim doom your procedural due process claim? No, it does not. Because the procedural due process claim is an independent claim on which they were not instructed except for the burying of it within the deliberate indifference standard. And if you allow that, then you're saying there is no distinction between a substantive due process claim and a procedural due process claim. And I don't know who comes up with this court's model jury instructions. I didn't have a chance to find out. They're not binding on us. Well, I understand. But all the case law in them is. And that's Patrick. I agree with you there are two separate claims. I agree that my question is, if in fact exigent circumstances existed that excused the officers from going to seek a warrant before seizing the children, would you have a due process claim? Yes. And what would it be? Because your due process claim would only exist in the absence of exigent circumstances, wouldn't it? No. The full panoply of the exigent circumstance analysis in Wallace, in Rogers, in which this court told everyone we have said this enough, is that even if you had exigent circumstances, imminent risk of serious bodily injury, yet didn't have time to get a warrant, even if all of that was true, there's one final outlier. And it's not an outlier. Because we're supposed to honor this fundamental family right. And that is that there is a less intrusive means, which in this case is as simple as, hey, let's go outside of the house. Let's go to your sister's house, like mom suggested. Let's go across the street. Let's go to a hotel. The house was cleaned up by 2 o'clock in the morning that night. That is an extremely important prong, lest we just throw under the bus this fundamental right of familial association, which leads to now we know, because of all the press, I knew it for years, to literally physiological changes in children's brains. That's why it's a fundamental association right. Actually, it was that before we knew that from a science standpoint. So that's why, Your Honor, no, there is still an independent procedural due process claim. The jury did not rule on it. It really wasn't presented to them. You've seen in the record my beseeching the court to please let us have our procedural due process. Did you submit an instruction on procedural due process? Of course. Everything that I complain about that I didn't get, I submitted. My point is you preserved the procedural due process argument by submitting an instruction. And so we don't need to review your motion for summary judgment. But may I still, if I may have 30 seconds to say what I'm trying to say about that. Would you agree, Your Honor, that if you agree in the end, hey, you're right, you should have had that right, then that MSA needs to go back and be looked at because it wasn't. So it wasn't foreclosed by the trial record. Well, there's two separate issues. You preserved your argument by submitting the jury instruction. We have to decide whether or not on this record the judge should have given the instruction. It may be that her failure to do so was harmless error because of other findings the jury made. That's why I was asking the second question. OK. And then since you're not enamored with that argument, I'd like to move on to attorney's fees real quick. At least I got a chuckle out of Judge Battaglia. Thank you. I want to point out that they say in the record some things I take personally. They say that these are not intended to be windfalls for attorneys. It says right in the record that I never have an agreement with my clients in my retainer agreements where I never make more than them. So perfectly lawful, by the way, in case it makes you wonder. We checked it out with the bar. So it's not going to be a windfall for me. And it will help these two young men. And hopefully, if this is reversed as I'm asked. And Judge Huff just gave you a little bit less than what you asked for, right? Yeah, no, she gave me quite a bit less. And for a person who works out of Northern California, it felt like she gave me a lot less. But I'm not complaining. And that's why we didn't pursue. In other words, she did not enhance your fee in any way. She reviewed your fee based on whatever she reviewed it on and gave you maybe even a little less than you asked for, right? She did, indeed. And we cut it down ourselves. She did a lodestar, pretty much the way you're supposed to do it. Can you address for us, because I think it's one of the parts of the case that I have some difficulty with, Judge Huff's eventual what I would call jam oil? I actually didn't hear those last words. Her ruling on the motion for new trial. On our motion for new trial? Yeah, when you make a motion for new trial, and then she grants a judgment in your favor. And they argue that that was incorrect, that she shouldn't have granted a judgment in your favor. In terms of saying that she did find jemison to be the cause. Right. So tell me why she was correct in doing that. Well, constitutional injury is injury. I mean, this causation thing gets a little conflated. Someone who's drinking and driving and hits someone, you've got to have causation. That's great. But in George B. City of Long Beach, which we cite in our brief, it's made very clear that the constitutional rights violation is the injury. So in other words, there's a president of the United States, some mythical president at this point, sits in the White House and conspires to deprive citizens of their civil rights and then turns to the attorney general and says, do that. And the attorney general says, I'm not going to do that. Is there a 1983 claim or a Bivens claim against the president? No, that sounds like a water cooler talk. Well, so but here. Some president's water coolers. So I'm trying to figure out, in the absence of causation, how do you have a constitutional injury? If somebody does something, but it doesn't hurt your client. Now, Judge Huff made a different finding. Judge Huff said, it must have hurt your client because they wouldn't have gone ahead and seized them. So that's a separate issue. But you seem to be arguing that you don't even need to show causation. I'm saying that Judge Huff was right in saying that her actions and the other integral participants' actions, another rather crazy aspect of this ruling in the trial court, that action, their inactions and their mistakes and their actions obviously caused the removal of the children. To me, I don't know how anyone could argue. Judge Huff, to be precise, only found that Jemison's inactions caused the removal of the children. Yes, she added of her own accord a conclusion that her actions caused the removal of the children, that that's correct. But I'm not going to give up telling to you what your court said in George, which is that constitutional injury, that it's all wrapped up in the cause. That's why we have the nominal damages provision that's been in the law for a long, long time. And you got that. And we got that. OK, so I'm having a hard time understand why you're complaining about that part of it. You just want more. Yeah, I- You're just saying, if there's causation as a matter of law, I ought to get more than a dollar's damage, even though the jury said otherwise. That's correct. That is correct. That the children, I don't know, pulled crying and screaming from their parents, it defies the facts. Well, you had your shot. You had your shot to 12 people, I assume, right? No, eight. Eight, well, that's your fault. 12 people, go ahead. No, it's somebody's fault, not mine. So you, and now you want us to change that as a matter of law? Because they did it wrong. You know, I didn't ask as a matter of law. I asked to give us a chance to- Do it again. Yeah, to find eight people who understand that these children are damaged for life. These are children who will, in my experience doing this, which I do a lot, they will be outside the bathroom when you try to go to the bathroom. They will break down and cry when you have to go to the store. There's a new science, and I'm sure this court probably knows a lot about it, and if not, it'll be hearing about it in years to come. More experts will be called into these cases to establish these facts. Other areas, if I may, or I'd rather actually open it up to areas that you have inquiry about. I think that's- Well, the one that particularly concerns me was you move for a new trial, and instead the judge gives you judgment as a matter of law. It's a little procedurally difficult that I was trying to figure out. That's why I was asking questions about it. Is that procedurally correct? Can a judge do that? I mean, I would think that that would tend to violate- Now, we all think judges can do everything, but I mean, I just, as a matter of procedures- And some judges think they can do everything and often do, but the interesting thing about what you're asking judges is that it seems like that would be a procedural due process violation, because someone would be able to argue, gee, I didn't have a notice and an opportunity to be heard that that was the argument. Now, wait a minute. You both had a chance to go back to the jury and get the verdict straightened out. You both asked her to make a decision. You both briefed what you both wanted. Neither of you wanted what she did, and now you're saying she did it sua sponte, even though you asked her to do it, right? That's a good point, Your Honor. Yeah, I noticed the comparison I was making. Yeah. Yeah, I would say you win that argument, if that opinion matters. Geez, I haven't done that in 22 years. Thank you very much. Are the juries, the other question I had is, we have a jury that says, as to the two people on the scene, let's assume for a second, take procedural due process out of it. As the two people on the scene, you didn't violate the children's constitutional rights. As to the supervisor, they say you did, but no causation. And what Judge Huff was struggling with, and I think quite appropriately, is how does one resolve those two verdicts? Are they just flatly inconsistent, or is there a way to resolve them? I don't think there's a way to resolve them unless you slip into a coma. You've got two people on the ground. Then why didn't you ask the jury to do that, either one of you? Why didn't we go back and? After they got the verdict, and you saw that it was inconsistent, why didn't you ask them to go back and do it right? Because this wasn't a matter where we were gonna get to go back to the jury in a full-blown thing, and try to correct the, I mean, are you saying that I would, because this wasn't my understanding, I would now be able to call witnesses back, I would be able to put them on the stand, because, Judge, without that, I got nothing. Yes, you do. You have a verdict form that was submitted to the jury. They came back with an inconsistent verdict, based on the interrogatories that you asked. The judge said, you wanna resubmit it to them, and you both said, no, I think we can figure this out if you make the decision one way or another, right? Correct. And so then you just figured you'd get a new trial? No, but let me be clear about that verdict form argument. If you look at the top of verdict form two, it says, don't come here, don't enter this room, unless you've already found violations in verdict form one. So that's in there. So to me, that's a plus, that's a feather in the plaintiff's hat. There's been a constitutional violation that at least gets us to nominal damages, right? So you'd rather have your cake, a bird in hand is the analogy. It's bird in hand, and as I just said to you, I did not see that I would get to be able to put on, here's the thing, Your Honors, that verdict form, hopefully the jurors aren't watching, is on a level of crazy, the way that they handled this case in that verdict form. But without having the ability to go back and put on witnesses, I felt like there was already so many cars that had come off the track at that point by being denied my motion on the expert testimony, by being denied my procedural due process claim, by being denied letting the social workers say, well, you know, and my feeling was this, which is subjective, the exact opposite of what every bit of law says. So I had to counter all those, plus you're asking me to remember what happened a year and a half ago, and I don't know what I had for dinner last night. But those were thought processes that were going through our heads, me and my team, which included, you know, Mr. King. I have the paralegal talked about and the attorney's thesis here, Alicia Covill. And we discussed all of that. And yeah, everything in our business, as you well know, is a cost-benefit, shot in the dark, you know, which way is south. So I did the best that I could. The jury, juries are juries. A lot of people settle cases, so they don't end up in front of juries. I would like to address any other issues, though. I mean, I have a couple of my own, like the RFAs. We felt that was a pretty incredulous abuse of discretion. The RFAs, the request for admissions, especially allowing one in that goes to an ultimate fact from a software programmer. So a software programmer's non-answer to a request for an admission ends up going in front of the jury, albeit with an instruction, this only applies to Mr. Lewis. But you talk about a bell that can't be unrung. I mean, to me, that's the poster child. Just from a logistical standpoint, when did you come into this case? I mean, there's a question about, I'm not sure when exactly you came into the case from that date to the date that there was an application to withdraw the request for admissions. Wasn't that quite a while? Okay, now that's me, but Mr. Lewis was not my client. That was Mr. King, and I can tell you, as soon as he got into the case, you know, the world that we work in, as soon as sometimes a week or two, he jumped on that, he jumped on that, so. But it was late in the discovery phase. It was late, and Mr. Lewis wanted to go on his own. To clarify, he failed to respond when he was pro se. Yes, yeah, it's entirely, all the errors were in pro se, and we were plenty of time for trial, plenty of time for trial, and it's. When was the first time the motion to withdraw the admissions appeared in front of the trial judge? In relation to the trial. In relation to the trial. I know there was a motion brought to a magistrate judge earlier, but my understanding was that the first time the trial judge was asked to allow the admissions to be withdrawn was three weeks before trial. And then I'm going to probably defer to your recollection, because I don't have that fact off the top of my head. I do have a little bill crunching it up in the back. It was short. It was short, yeah. But short or not, in a federal system where getting to the merits is supposed to be one of our hallmarks, I think it really avoided that, and it definitely was substantially prejudicial to my client and the children. My clients. Yeah, and as we've argued in the brief, hey, even if you're not going to agree that all of them should have been withdrawn, then these critical, goes to the heart of the matter, things you wouldn't let an expert testify about, those shouldn't have been allowed. This can't be anything but substantially prejudicial. Yeah, but you were stuck with that from the beginning. Me? Yeah, you couldn't ask DeMoss. That's true. You were stuck with that from the beginning. I was in the passenger seat. So the prejudice had already been made, done. It was a done deal. Once he, once Lewis missed the timeline, and you're not representing Lewis, you're not in a position to ask the court to un-ring the bell, so to speak. Only Lewis can do that. Is that right? That's correct. And I urged him. So you were stuck with that from the beginning. So the prejudice was done from the day Lewis missed the deadline. Well, that prejudice doesn't show up till you're in front of a jury. So I don't know about potential prejudice, and Mr. King did everything in his power to rectify that. And that's all we have. But he didn't get into the case until late. Right. I want to say maybe three months before trial, two months before trial. It was in the ninth inning, bottom of the ninth. Okay. Maybe that, and that's unfortunate, but it ends up hurting these two children and my client. If there's, I'd like to reserve, if I have any, do I have four minutes? No, you don't. I was going to say you're well over your time. So let's hear from you. That's why it's going up. That's right. Okay. Maybe the court will allow me a minute or two, depending what we hear. Thank you. Okay, thank you. I thought I heard that Mr. King is not arguing. Yeah, he got all the time. Oh, that's okay. Yeah. Okay. Good morning. May it please the court. Erica Cortez, Deputy County Counsel on behalf of the County of San Diego and Social Workers, Baxter, Quinteros, and Jemison. Your honors, when a unanimous jury found that Benita Jemison was not the actual or proximate cause of any constitutional violation, that finding ended this case. Did it end the case? So here's a question we didn't get to ask your friend here. They file a motion for new trial at the end of everything and say, look, the verdict, the verdicts are against the weight of the evidence. And Judge Huff plainly believes that because she grants a JMOL, but never rules on the new trial motion. Let's assume for a moment that just for purposes of discussion that she was incorrect in granting the JMOL. We'll get back to that later. She never ruled on the new trial motion, did she? She said it's moot because I've granted a JMOL. She said it's moot because their request for a new trial is based on the fact that the evidence did not support that there was- Right, and because I've granted a JMOL, I don't need to address that, she said. She also granted qualified immunity to the social worker. Right, but that doesn't help you on your Monell claim. It doesn't help on the, well, it depends on if the qualified immunity- So my question is, why shouldn't, there's a new trial motion out there that nobody ever addressed on its merits. They say we should get a new trial on everything because the jury verdicts are against the weight of the evidence. She says, I'm not gonna touch the jury verdicts as to the two people on the scene, but as to the supervisor, I do think the jury verdict was not only against the weight of the evidence, I think the evidence compelled a contrary result. So maybe she was wrong on whether it compelled a contrary result, but it's pretty clear to me she thought it was against the weight of the evidence. And so somebody's gotta rule on that motion, doesn't? Well, Your Honor, if I understand your question correctly, well, the court's order implicitly ruled on a denial of a new trial by finding that on the issues that they complained of, which is, hey- Causation. Causation and the weight of the evidence, like they said in their MSA shows that there was no evidence to show that any objective reasonable worker would have removed under these circumstances without a warrant. By finding that- So she found, she said there was ample evidence of causation. Correct. So much evidence of causation that I'm gonna grant judgment as a matter of law. And grant qualified immunity. Right, but qualified immunity aside, because it's not relevant to this question. Well, Your Honor, actually I disagree. I think it is relevant to the question in that if the grounds for granting a new trial are let's reweigh and put on new evidence as to whether or not these workers were objectively reasonable in the removal of exigency without a warrant, then the virtue that, the fact that she found in over eight pages of her order all of the reasons that did justify the removal- Not talking about the workers. I'm talking about Ms. Jemison for a moment. She found that Ms. Jemison's actions, which the jury found were unreasonable, caused the injury, caused an injury. She found that as a matter of law. Yes- And you're arguing in your briefs that she made a mistake by finding that as a matter of law because the jury verdicts are reconcilable, which we can get to in a minute. I'm saying, let's assume you're right, that they are reconcilable. Doesn't, don't they still get a shot at somebody in arguing that they're entitled to a new trial? Even if you, even if Ms. Jemison is entitled to immunity, they would be entitled to try a case against the county, would they not? No, Your Honor, because independent of the- A Minnell case? They couldn't try a Minnell case about inadequate training against the county, even if Jemison had immunity? Your Honor, they could, but they did that, and they put forth all of the evidence that they had then and that they will have now, and that's why I'm saying independent of the causation, and if we set aside and we leave qualifying immunity in place on the clearly established prong and you get to Monell, on the record before the jury, the district court, and which would be the exact same record as if, excuse me, if it was retried. As a matter of law, independently, they could not, they did not meet all of the requisite elements that the Supreme Court has set forth for a failure to train liability, so it would be pointless to remand back for a new trial when, as a legal matter, there's no notice. Did anybody ever rule on that? See, at the end of the day, the judge left in place the $2 award against the county. Since she found that Ms. Jemison was entitled to qualified immunity, she must have believed that there was a claim against the county that survived, even if the individual workers were not liable. Correct, Your Honor, that is what she believed, but the argument on our motion- So she must have found there was sufficient evidence on the Monell claim to go to the jury. Well, if the court looks at the district court's order on that specific section, the failure to train, she actually does not address all of the elements that are required as a matter of law to find failure to train. As this court's aware, even in Kirkpatrick recently, an en banc panel showed that liability for failure to train is very rare, and that deliberate indifference is a strict standard that requires actual or constructive notice of a faulty training program. And the reason for that is, in order for a county to say, hey, I'm choosing between two options, I have my workers out there violating rights or causing problems, but I'm gonna turn a blind eye, they would have to be aware that there is a problem out there. The plaintiffs put forth zero evidence of not even one other situation where there was even a lawsuit alleging that a child was removed incorrectly prior to 2011 because of anything to do with marijuana. And therefore, there was no notice for the county then or now, because to this date, there isn't any evidence that there's any adjudication. Prior cases, prior cases are relevant to the qualified immunity analysis. They don't prevent, the absence of clearly established law doesn't prevent Manel liability against the county, does it? No, Your Honor, but a necessary requirement under Connick v. Thompson, a Supreme Court case for a failure to train liability also require notice. Deliberate indifference means that a county will on actual or constructive notice that their training program was so faulty that they were gonna lead to constitutional violations. My question still remains. Under these circumstances, they say the judge erred in several ways. You say the judge erred in several ways. The judge never had a chance to determine whether in light of all those arguments, she should have just started all over again and granted a new trial. Why don't we send it back to her and say, you ought to rule on whether or not alternatively, you would grant a new trial. Normally, when you grant a JMOL, you make an alternative ruling of a conditional new trial, and that ruling is subject to a lot of deference by the appellate court. Why shouldn't we just say, judge, you left out part of this. Go back and figure out whether at the end of it, you should just grant a new trial and start over and try to do it right. Your Honor, because I think a new trial, she did implicitly rule that a new trial was warranted given the fact that the workers were not liable, or excuse me, that Ian Baxter and Nancy Quinteros were not liable, they did not commit a constitutional violation. She found all the elements were in place to hold Ms. Bonetta Jameson liable, but granted her qualified immunity. Therefore, she then, there was no need to do a new trial on whether or not- On the individual worker's liability. Correct, correct. And then, so that allowed her to rule on and assess the evidence for the failure to train verdict against the county. And based on the record that the district court had, the district court found that it was supported by substantial evidence by the verdict. And therefore, she denied our motion for judgment as a viable-  that there was sufficient evidence to support the verdict against the county, independent of any liability of the individuals. Your Honor, this court would look at whether there was- We review that de novo, or do we review it with deference? I would believe it would be de novo, looking at what the jury heard, or with deference to the jury verdict, because whenever there is a jury verdict- We have to figure out whether there was substantial evidence to support it. Correct, and in looking at the- Okay, and what do you make of this? This is what the district court relied on. She said- She relied on the findings that Jemison's actions, the special verdict findings, were intentional and unreasonable. And then she went on to discuss- She says the jury's finding is not- That jury's finding is not contrary to the clear weight of the evidence. But then further, she says Jemison testified she was responsible for supervising Baxter and Quinteros, and it was ultimately her decision to remove the children. So even though- Oh, one more aspect of this. She talks about she never discussed the warrant requirement or less intrusive alternatives with the social workers on the site. So to the extent there was constitutional injury, her decision, based on Jemison's own testimony, would be supported by the weight of the evidence. That there was a direct causal because it was ultimately Jemison's decision. Is Your Honor referring to causation in order to support the district court's reversal- Yeah. Okay. In answering what I think are, what I'm interpreting as two different questions, whether substantial evidence, if we find that the district court was fine in reversing causation, she then for was allowed to weigh the evidence or review the evidence or substantial evidence to support the failure to train the verdict. I think independent of that, but then there's also the issue that we disagree that she shouldn't have even got there. But addressing what I believe is the question about if we're just looking at whether her review of substantial evidence supports a failure to train verdict. No, you've answered that. I think Judge Wardlaw is asking a different question. About the original causation. Okay, that's where I was confused. I apologize. Like any common law tort, 1983 requires causation. It's in the plain language of the statute. This court has said in multiple occasions- Let's assume we agree with that. Let's assume we don't buy the argument that a constitutional violation falling in the forest that hits no one and hurts no one does gives rise to liability. Okay. In this case, and I think Judge Wardlaw focused on the question. She said, look, the jury found that your client, Ms. Jemison, acted unreasonably. She didn't get sufficient information before authorizing the warrantless seizure. I understand why the jury said, I'm not going to put liability on the poor schnooks on the scene. They acted reasonably. They reported to their boss and their boss said, do it. So I'm not going to hold them liable. But their boss should have asked more questions and got more information and explored the alternatives. So she acted unreasonably. And then the jury, for some reason says, but that didn't cause the seizure of the children. And Judge Huff says, quite reasonably, oh, come on. It's of course what caused the seizure of the children. Nobody thinks the guys on the scene would have seized the children had the boss said, don't do it yet. And so that's what prompts Judge Huff to act. And she recites the facts. And she says, there must be causation. And so that's what's giving us trouble with this case. Isn't she right? If in fact there was a constitutional violation by Ms. Jemison, didn't it necessarily cause the seizure of the children? No, I think your honors are collapsing the two and analyzing it as if it was a sense, a general verdict form where they collapsed. You created a, you made a constitutional violation because you caused X. In this case, jury instruction number 14 told the jury that they were required to meet all elements before they could find a constitutional deprivation. And they did. They found a constitutional deprivation by Ms. Jemison. They did not, your honor. They found that she acted in reasonably inactions on that day in question. Then they said she was not the legal or approximate cause. Okay, but we're jousting with each other here. If they found she was the legal approximate cause, wouldn't there have been sufficient evidence to support that verdict? No, your honor, because I think for the exact same reasons that the evidence that was supporting the verdict against actual ground workers, that the children were in a home that was risk of exploding due to the butane hash oil extraction process, the CO2 tanks that could have created a poisonous or anesthetic to the children, the fact that there was really potent THC littered throughout the house that at any given moment, a two or four year old could- Right, but it wasn't up to the people at the house to make the decision to remove. It was up to Jemison to make that decision and instruct them. And that there's evidence that supports that and there's evidence that she didn't make the right inquiries. Your honor, that is correct, but there's also evidence that the jury could have found that the substantial factor in the removal was the parents' own conduct in putting these kids at risk. The jury could have found lots of things, but we're trying to reconcile these verdicts. And the easy way for me to reconcile them is to say, look, at the end, we're trying to figure out whether somebody acted unreasonably. And that's really the instruction. Did they act unreasonably in doing something? And if I'm a juror, I look at these social workers and I say, they confront what looks like a dangerous situation. And they call their boss and they say, boss, what should we do? And she says, take the children out. I understand why no juror is gonna hold the social workers liable under that circumstance. They did the reasonable thing. They called their superior, but the jury could say, but you know something? She was unreasonable. She didn't ask enough questions or give them enough alternatives. So why aren't those, those strike me as perfectly reconcilable. Once having found that she acted unreasonably, like Judge Huff, I'm sort of mystified as why then there was no causation. Because I think the law of this circuit is that when there's a jury verdict in favor of a social worker or an entity, or excuse me, employee, they're entitled to have the evidence viewed in the light most favorable to them resolving all conflicts in their favor. And I think reviewing this evidence, you could also say that she may have asked more questions. She may have gone out to the scene to observe the scene on her own. But at the end of the day, they did not find her to be the cause of any constitutional deprivation. But there was a jury verdict against her about whether she acted reasonably, correct? About her conducts that day, whether she, so you can act. The jury found that she acted unreasonably. Correct, but that she did not cause the constitutional deprivation because jury instruction number 22 specifically told the jury that they had to find causation that she caused them injury. So when we're, this court is required to view all reasonable inferences in the favor of the social workers. And it's more than reasonable to say she could have done more in her actions that day. But at the end of the day, she was not the substantial factor in why these kids were removed. It was the parents' conduct in putting these kids at severe risk by having them live in a hash oil lab that it could explode at any point in time. Okay, so now you've reconciled the two verdicts. My question is still, why doesn't Judge Huff at least get to decide whether or not she thinks a new trial is required because the verdict is against the weight of the evidence? She never made that decision. She made the, in reversing causation, she made the decision that the weight, although she used the wrong standard. Implicitly, she said the weight of the evidence  Correct, well, she made the ruling that there was insufficient evidence to uphold the causation standard, although we argue that she used the wrong standard because she said they could have found something or should have found something else. That's not what a court is supposed to do when weighing a jury verdict. But again, if she ruled on that and we all agree for or concede for argument's sake that we leave in place, Bonita Jemison violated the constitutional rights. She did rule independently of all that as a matter of law that the evidence supported a judgment against the county on a failure to train. And that was an error because there is absolutely no evidence to meet the elements of a failure to train in that very rare circumstance that the Supreme Court has said should rarely be granted. In fact, our case is almost exactly like the case in Connick where the Supreme Court held that there were DAs that not trained on Brady violations, but that because they received general legal training, having very discreet types of training isn't enough to reach that level of severe notice and deliberate indifference. In our case, there was plenty of evidence that the social workers attend an eight to 10 week social worker academy where they receive agency and warrant training. They have yearly training by county council, monthly training by a regional academy. And the issue wasn't that was there any evidence that they didn't get exigency training or that they couldn't get warrants, they could. The issue was whether they didn't get enough training on a very discreet issue like medical marijuana. But that doesn't, like the case in Connick, that doesn't assume that specific sub-discreet type of training is not the level that's required under the Supreme Court to find this rare cause of action. Can you help me out with the jury verdict? Is there a jury, separate jury verdict with respect to failure to train? I'm looking at the verdict about the claims against CL and CL's claims and there's 14 separate interrogatories, maybe more. 21. 21, do any of them deal with failure to claim expressly? Well, the jury- There are 20, I see. 21 is a failure to train. Okay, that's the one I don't have in front of me. What did the jury find with respect to failure to train? The jury found that this was the, that the County of San Diego was deliberate because of the known or obvious consequences. So it essentially found that a lack of medical marijuana training or THC extraction training would be- Yeah, well, I don't know what it essentially found. The jury found that, answered that question, yes. Correct, but the district court was then required as a matter of law to review all of the legal elements that are required- And your argument is that the jury finding was, there wasn't sufficient evidence to go to the jury on that issue. Correct, and that- If there was sufficient evidence to go to the jury on that issue, if we conclude that there was, then the nominal damages verdict should stand, should it not? If the conclusion is that there was substantial evidence and that there was no error in the- Right, let's assume that we, let's assume that, you know, your two clients win because of the jury verdict and the other one wins because of qualified immunity. If there was sufficient evidence to go to the jury on the issue of absent, on the County liability Monell claim, then we should sustain that $2 verdict, shouldn't we? If, yes, if the qualified immunity analysis that applies to Benita Gemesis is found on the second prong of upheld on the clearly established and not that viewing the record as a whole, her conduct was objectively reasonableness. Assuming those findings are made by this court, yes, and that would, that would stand. The findings were made by the jury. In other words, the question is, if that jury finding stands, you have a $2 liability plus attorney's fees. If the jury finding only on the Monell, but- Yes. Because if the jury finding stands on the fact that nobody violated their constitutional rights, we don't get to the Monell verdict. It is basically surpluses and should be stricken because they're essentially, not inconsistent, they're just non-viable findings because they were expressly told to stop after finding that none of the three workers violated the constitutional rights of the family. And in fact, counsel, I think your honor asked a question to plaintiff's counsel about the causation and how that wouldn't be required, an element that had to be proven when in fact it was counsel's own verdict form or jury instruction 22 on causation that was adopted by the court and nearly identical to the one that was given by the jury that said that they needed to prove causation to find a constitutional violation. And plaintiff's also agreed to question two on the verdict form requiring causation. So all of the parties were well aware that all of the elements had to be met in order to actually have a violation in this case. And therefore the district court who took it upon herself to reverse the causation based on what could have possibly been an alternative conclusion is not the standard because as noted before, they could have also said, hey, she could have done a couple more things that day. But at the end of the day, these kids were properly removed because at any given point, they could stick their finger in hash oil. These were two and four year olds and ingest it and be poisoned and end up in the hospital. There was marijuana in an ice cream bucket behind a Kit Kat bar, all in places where young children are gonna be prone to access or be confused. And at any moment that could happen. And so given that that finding was reversed improperly and all of the parties agreed that it was a necessary element before a violation stands, that that was incorrectly reversed. But, oh, sorry, go ahead. No, I'm just thinking that you're over your time. So. Oh, I apologize, I didn't. No, you didn't have to apologize. But does anyone have any further questions? Are there any questions? Thank you. Thank you. I'll give you a minute. Thank you. Here again, the RFAs affect this. On page 55 of our third brief is the request number 18, which goes to the heart of the failure of the inability of the parents to adequately supervise or protect the children. Confused the jury.  It would confuse, many jurists would be confused because not everybody, there's not a lot of these cases compared to the civil rights cases that are on the court's dockets on any given day. And this, the county repeatedly in their briefing and here now keeps trying to pigeonhole it as there's no sign that there wasn't specific training or that specific training, the lack of it on marijuana caused this violation. Well, the fact is there's a less intrusive means and we outlined for you on pages 20 through 23 and in addition, page 29, I don't know why it didn't end up in the bullet list. All of these things at the county were not just the human beings who testified, including the PMK, Mr. Phillips, but in documents that they don't get it, that they do not have a grasp of the law in Wallace, the law in Rogers, the law in Mabe. They don't have it. It's all over the board. And Jemison herself never, couldn't name a single constitutional amendment had anything to do with her work. So this is, it almost is a complete failure of training. It's certainly inadequate training and it's certainly when the compassionate use that comes around, it's a situation where you're gonna have these kinds of consequences. And one last thing, the court's failure to allow that grand jury report to come in is another of these just overarching things that affected the whole trial. And yet it was spot on and the behaviors and the disregard that they used in the attorney fee argument at the motion hearing, basically saying, essentially we're gonna keep doing what we're doing. A lot of that could have been stopped if the court would have allowed the evidence in which under 803, I think it's A3, is presumptively comes in to evidence. They had to argue it was untrustworthy and they didn't. We would have been able to show to this jury that this county of San Diego, they don't care. The Compassionate Use Act had been around at that point for like 10 years and the county was just, didn't care. Unlike all of the other cities in the county, they had all done something. So I asked the court to, and maybe the court does recognize this case had a lot of warts. And in that sense, I think my clients were essentially denied a fair trial. I think you can answer it in one sentence. What do you want us to do? I was just gonna ask that question. I know what they want us to do. He can't answer it in one sentence if his life depended on it. No, I have no problem. What should the capital letters at the bottom of the opinion? So I'll put it. Put aside your attorney's fees. I know you want your fees. Tell us what you want us to do. I just told you I give half of them away. With the judgment. Tell us what you want us to do. Give half of them away. Worst case scenario. No, no. Tell us what you want us to do. In one sentence. One sentence. Do you want us to affirm the district court? All you've done is invite a run-on sentence. What do you want us to do? In the very least, not disturb things as they are. At the most, I would like you to allow us to go back to the jury on damages for the children. So that's my question. Do you want us to affirm the district judge? Or do you want a new trial? I would like a new trial. If you get a new trial, you lose what you got so far. Maybe. No, I'm telling you that. That's your choice. Do you want what you got so far? Or do you want a new trial? I see the issues as more complex than that, Your Honor. You may, but I don't. So tell me. I understand. If you have that choice, new trial or what you got so far, what do you want? I'm gonna take the new trial.  Yeah. But I'm also gonna hope that then the MSA will get rid of the fine. See, I told you he couldn't do it. Yeah, he couldn't do it. Well, he just did. All right, you're well over your time. Lewis. Fine, Your Honor. Lewis versus County of San Diego is submitted and the session of the court is adjourned for today. Thank you. All rise.
judges: Wardlaw, Hurwitz, Bataillon